IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| OGDEN UT SOLECO RETURN, LLC,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>SOLECO INCORPORATED; HERITAGE EQUITY FUNDING, L.L.C.; DETENTION EASEMENT PROPERTY, LLC; and DOES 1-10,<br><br>　　　　　Defendants. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br><br>Case No. 1:14-CV-00050-TC |

　　　　Plaintiff Ogden UT Soleco Return, LLC (Ogden Soleco) owns a parcel of property previously owned by Defendant Soleco Incorporated (Soleco). Although most of Soleco's property was transferred to Ogden Soleco in 2010, Soleco retained ownership of an adjacent parcel, which was designated for use as a detention pond (the Detention Area). Soleco later transferred the Detention Area to Defendant Heritage Equity Funding, L.L.C. (Heritage), which then transferred it to Defendant Detention Easement Property, LLC (DEP).[1] The parties dispute whether Ogden Soleco has an easement to use the Detention Area.

　　　　To establish its easement rights, Plaintiff filed a complaint on April 22, 2014, alleging causes of action for slander of title, intentional interference with economic relations, quiet

---

[1] It is unclear whether Soleco still exists. According to the docket, Soleco has not been served with the complaint, and no attorney has entered an appearance on behalf of Soleco. The motion to dismiss was filed by Heritage and DEP; Soleco did not join the motion. For this order, the court will refer to Soleco, Heritage Funding, and DEP collectively as "Defendants."

title/easement by implication/declaratory judgment, fraudulent transfer, injunctive relief, breach of covenant, and breach of the covenant of good faith and fair dealing.  In lieu of an answer, Defendants filed a Motion to Dismiss (Dkt. No. 12).  After carefully considering the materials presented by each party, the court denies the Motion to Dismiss.

## **FACTUAL BACKGROUND**[2]

Soleco previously owned a piece of real property located in West Haven, Utah.  Wal-Mart Stores, Inc. (Wal-Mart) owns an adjacent parcel.  Intending to develop the properties into a retail shopping center, Soleco and Wal-Mart entered into a Development Agreement on January 9, 2007.  The same day, Soleco and Wal-Mart executed and recorded a document titled "Easements and Covenants and Restrictions Affecting Land" (ECR).  To complete the development, Soleco obtained financing from Bank Midwest, N.A.  The loan was memorialized in a Loan Agreement dated March 8, 2007. (Dkt. No. 2-3.)

In the Development Agreement and the ECR, Soleco's property is identified as the "Developer Tract" and Wal-Mart's parcel is identified as the "Wal-Mart Tract."  (Development Agreement at 1, Dkt. No. 2-1.)  Property drawings attached to both documents depict the Detention Area adjacent to the Developer Tract to the west.  (Id. at 22.)

As part of its preparation to enter into the Development Agreement, the ECR, and the Loan Agreement, Soleco retained engineers to prepare a Site Development Plan (Dkt. No. 2-5), which was submitted to West Haven City on May 1, 2007.  The Site Development Plan includes

---

[2] The facts are taken from the complaint and exhibits to the complaint (Dkt. No. 2), with "all well-pleaded factual allegations . . . accepted as true and viewed in the light most favorable to [Ogden Soleco]." Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999).

the Detention Area as identified in both the Development Agreement and the ECR.  In addition, the Site Development Plan indicates that water will drain from the Wal-Mart Tract to the Detention Area and from certain Outparcels and portions of the Developer Tract to the Detention Area.  (Dkt. No. 2-5 at 17.)

After finalizing the various agreements and obtaining financing, Soleco at some point could not perform on the Development Agreement and defaulted under the Loan Agreement.  On about May 1, 2010, Bank Midwest foreclosed under a Deed of Trust on all of Soleco's property pledged as collateral under the Loan Agreement.  As a result of the foreclosure, Bank Midwest became the owner of the Developer Tract, Outparcels, and Additional Developer Tract Restricted Area (collectively, the Developer Parcels).  Bank Midwest placed all of the property it acquired into Ogden Soleco, a single asset subsidiary.[3]

Although Ogden Soleco now owns most of the property previously owned by Soleco, Soleco retained ownership of the Detention Area.  On about May 5, 2011, Soleco transferred the Detention Area to Heritage, which in turn transferred it to DEP.  Defendants refuse to recognize an easement for Ogden Soleco's disposal of storm water onto the Detention Area.

## ANALYSIS

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir. 1991).  The court may consider the facts alleged in the complaint, along with

---

[3] Ogden Soleco is a wholly owned subsidiary of Master Control, LLC, which is a wholly owned subsidiary of Bank Midwest.

3

"'documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'" County of Santa Fe, N.M. v. Pub. Serv. Co. of New Mexico, 311 F.3d 1031, 1035 (10th Cir. 2002) (quoting Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 (10th Cir. 2002)). In doing so, the court accepts as true "all well-pleaded factual allegations" in the complaint, which are "viewed in the light most favorable to the nonmoving party." Sutton, 173 F.3d at 1236. The court "must indulge all reasonable inferences in favor of the plaintiff." Curtis Ambulance of Florida, Inc. v. Bd. of County Comm'rs of Shawnee County, Kan., 811 F.2d 1371, 1374 (10th Cir. 1987). To dismiss a complaint under Rule 12(b)(6), "it must appear beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief." Swanson v. Bixler, 750 F.2d 810, 813 (10th Cir. 1984).

According to Ogden Soleco, the Motion to Dismiss should be denied if the facts alleged in the complaint can establish an easement under any one of three theories: express easement, implied easement from prior use, or implied easement from map/boundary. (Mem. in Opp'n to Mot. to Dismiss at 7, Dkt. No. 15.) At oral argument, Defendants agreed that the key question is whether an easement could exist under the facts pled in the complaint. After reviewing the complaint, its exhibits, and the applicable law, the court concludes that Ogden Soleco has pled sufficient facts to support its claim to an easement.

I. **Express Easement**

Ogden Soleco first alleges that an express easement exists over the Detention Area.

> Although there are no specific requirements for the creation of an express easement, Utah courts generally look to the intent of the parties to an agreement purportedly transferring real property to determine whether the document sufficiently describes the interest granted in a manner sufficient to construe the instruments as a

>conveyance of an interest in land. Words that clearly show intention to grant an easement are sufficient, provided the language is certain and definite in its term.

Potter v. Chadaz, 1999 UT App 95, ¶ 9, 977 P.2d 533.  Moreover, "the circumstances attending the transaction, the situation of the parties, and the object to be attained are also be considered." Evans v. Bd. of County Comm'rs of Utah County, 2004 UT App 256, ¶ 12, 97 P.3d 697; see also Adamson v. Brockbank, 185 P.2d 264, 274 (Utah 1947) ("[T]he inference of intention must be drawn from all the circumstances under which the conveyance is made, and not from one alone.").

Here, Soleco and Wal-Mart expressed their joint "desire that the Shopping Center, the Detention Area and the Additional Developer Restricted Area be subject to the easements and the covenants, conditions and restrictions hereinafter set forth." (ECR at 1, Dkt. No. 2-2.)  Soleco and Wal-Mart went on to identify the easements that were being created in the shopping center. First, the parties defined "Common Areas" as "all of the Shopping Center except the Building Areas and those portions of Additional Developer Tract Restricted Area which are not used for buildings," (id. at 2, ¶ 1.2), and granted each other easements across the Common Areas "to install, use, maintain and repair public utility services and distribution systems []including storm drains, sewers, utilities and other proper services necessary for the orderly development and operation of the Shopping Center." (Id. at 4, ¶ 5.3 (emphasis added).)  According to the maps attached to the ECR, the Detention Area is not included in either the building areas or the Additional Developer Tract Restricted Area.  (See id. at Ex. A-1.)  As a result, it appears to be part of the Common Areas, which are subject to easements for storm drainage purposes.

Further, each party generally granted the other "a nonexclusive easement on its Tract or Outparcel for the benefit of the owner of each other Tract or Outparcel to use, maintain, and repair any storm water drainage system." (Id. at 4, ¶ 5.4.) "Without limiting the generality of the foregoing," Soleco also granted to Wal-Mart a "nonexclusive easement for storm water discharge and detention on and over the Detention Area." (Id.) Although Wal-Mart was the beneficiary of more specific language that identified the Detention Area, both parties agreed that they and any successor owners[4] would have the right to use the storm water drainage system. The Detention Area is a critical component of that system.

Finally, in its loan agreement with Bank Midwest, Soleco confirmed that the storm drainage system and other utilities were "adequate to serve the Project" and "[a]ll streets and easements necessary for the operation and maintenance of the Project are available to the boundaries of the Property." (Loan Agreement at 17, Dkt. No. 2-3.) In addition, when it executed on the Deed of Trust, Bank Midwest received "[a]ll appurtenances of the Real Property and all rights of Trustor in and to any streets, roads or public places, easements or rights of way, relating to the Real Property." (Deed of Trust at 3, ¶ 1.2.4, Dkt. No. 2-4.)

The relevant contractual provisions, individually and as whole, suggest a mutual agreement that Soleco, Wal-Mart, and their successors such as Ogden Soleco, would have full access to the areas of the shopping center that would be necessary for the operation of the project. The Detention Area would logically be an area that both parties would need to use. Indeed, the

---

[4] The parties agreed that any easements, restrictions, benefits, and obligations created by the ECR would be "mutual benefits and servitudes running with the land" and would "bind and inure to the benefit of the parties hereto, their respective heirs, representatives, lessees, successors and assigns." (Id. at 9, ¶ 13.)

parties explicitly granted mutual easements for use of the storm drainage system and across common areas. And under the Deed of Trust, Soleco transferred all rights and appurtenances to the Developer Parcels, including easements. Viewing the complaint and supporting documents in the light most favorable to Ogden Soleco, there are sufficient facts showing that the parties intended to create an express easement for all owners across the Detention Area.

## II.     Implied Easement

Next, Ogden Soleco alleges that an implied easement exists.[5] In its memorandum in opposition to the Motion to Dismiss, Ogden Soleco advances two theories of implied easement: implied easement from prior use and implied easement by map/boundary. In the complaint, Ogden Soleco alleges facts that directly correlate with the elements of implied easement from prior use. (See Compl. ¶¶ 54-60, Dkt. No. 2.) But Ogden Soleco did not plead allegations relating to a claim for implied easement by map/boundary. As a result, the court will limit its analysis to implied easement from prior use.

An implied easement from prior use requires proof of four elements:

> (1) Unity of title followed by severance; (2) That at the time of the severance the servitude was apparent, obvious, and visible; (3) That the easement was reasonably necessary to the enjoyment of the dominant estate; and (4) It must be continuous and self-acting, as distinguished from one used only from time to time when occasion arises.

Adamson, 185 P.2d at 272 (quotations omitted).

---

[5] Because a finding of an implied easement depends on the circumstances surrounding the relevant transactions, the court will consider the relevant documents and the surrounding circumstances relied on by Ogden Soleco. See Butler v. Lee, 774 P.2d 1150, 1153 (Utah Ct. App. 1989) ("An easement created by implication arises as an inference of the intention of the parties to a conveyance of land. The inference is drawn from the circumstances under which the conveyance was made rather than from the language of the conveyance." (quotations omitted)).

A.   **Unity of Title Followed by Severance**

Defendants do not contest that the Detention Area and Developer Parcels were originally owned by Soleco but title has since severed.  Rather, Defendants argue that the complaint incorrectly states that the severance occurred because of the foreclosure.  According to Defendants, it would be more accurate to say that the severance occurred due to execution of the Deed of Trust.  This distinction is irrelevant.  As alleged in the complaint, the relevant facts are that the Detention Area and Developer Parcels were initially under common ownership.  (Compl. ¶ 54.)  And the detention area was later severed from the Developer Parcels: one or more of the Defendants now owns the Detention Area, and Ogden Soleco owns the Developer Parcels.  (Id. ¶ 55.)  These two facts sufficiently plead unity of title followed by severance.

B.   **Apparent, Obvious, and Visible Servitude**

Defendants argue that the second element cannot be met because Soleco could not have created a servitude for its own use on its own land, so no easement could have been transferred to Ogden Soleco.  In Adamson v. Brockbank, 185 P.2d 264 (Utah 1947), the defendant advanced a similar position by insisting that he could not create an easement in his own land because "so long as the grantor owned what are now claimed to be the servient estate and dominant estate, his use of one for the benefit of the other was a mere exercise of a right of property over his own land, and in no sense an easement." Id. at 271.  The Utah Supreme Court rejected this argument:

> Whether or not the artificial arrangement of the material properties of his estate by the owner, constituted a technical easement is, under the facts and circumstances of this case, immaterial.  It clearly created a condition to the land sold partaking of the character of an easement, constituting at least a quasi easement, visible to the purchaser, and one of the things in the minds of the parties when the bargain of sale was made. . . . The presumption of law is that the parties contracted with a view to the condition of the property as it actually was at the time of the transaction, and after

> sale neither one had a right, without the consent of the other, to change that condition, which openly and visibly existed, to the detriment of the other.

Id.  See also Morris v. Blunt, 161 P. 1127, 1132 (Utah 1916) ("[I]n general terms, the rule may be stated that when the owner of a tract of land has arranged and adapted the various parts so that one derives a benefit and advantage from the other of a continuous and obvious character, and he sells one of the parts without making mention of the incidental advantage or burdens of one in respect to the other, there is implied an understanding and agreement that such advantages and burdens continue as before the separation of title.").

Ogden Soleco alleges that the relevant documents "demonstrate that the Detention Area had an open and obvious servitude to the Developer Parcels," and "[t]his use was apparent and obvious from the time the Shopping Center was first designed." (Compl. ¶¶ 56, 58.) After reviewing the documents, the court concludes that Ogden Soleco has sufficiently pled that the Detention Area was designed to be the storm water depository for the shopping center as a whole. Even if there was not a technical easement across the Detention Area when Soleco owned the Developer Parcels, the documents, and particularly the shopping center maps, make it apparent, obvious, and visible that the entire shopping center, including the Developer Parcels, would be using the Detention Area for storm water drainage.

### C. Easement Reasonably Necessary to the Enjoyment of Dominant Estate

For the third element, the Utah Supreme Court has explained,

> Where a party conveys a portion of land which he owns, he impliedly conveys all those apparent or visible easements over the land retained, which at the time of the conveyance are used by the grantor for the benefit of the part conveyed and which are reasonably necessary for the use thereof.

Tschaggeny v. Union Pac. Land Res. Corp., 555 P.2d 277, 280 (Utah 1976).  Here, the easement is reasonably necessary for Ogden Soleco's use of its property because without the Detention Area, there is no place to hold storm water runoff from the Developer Parcels.

### D.   Continuous and Self-Acting Use

Finally, to show continuous, self-acting use, "the route must be reasonably available and accessible without the need for structural alterations or significant coordination among the parties."  Abraham & Assocs. Trust v. Park, 2012 UT App 173, ¶ 12 n.5, 282 P.3d 1027.  Defendants appear to be correct that the Detention Area has not yet been used because the development has been on hold.  But even without past use, the facts show a reasonably available and accessible route from the Developer Parcels to the Detention Area.  Defendants do not dispute that Wal-Mart has an easement to use the Detention Area; they only dispute Ogden Soleco's alleged easement.  But there does not appear to be any obstacle that would require alteration or coordination to allow Ogden Soleco to also use the Detention Area.  Indeed, the site plans show that the Developer Parcels are directly adjacent to the Detention Area and are situated between the Wal-Mart Tract and the Detention Area.  Presumably, when storm water flows from the Wal-Mart Tract across the Developer Parcels and onto the Detention Area, the storm water from the Developer Parcels would follow the same path.  Because the storm water route from the Developer Parcels to the Detention Area appears reasonably available and accessible, Ogden Soleco can meet the fourth element at this stage of the case.

In sum, Ogden Soleco has sufficiently pled both an express and implied easement. While Defendants may conduct discovery to further determine the parties' intent for the Detention Area, Ogden Soleco has pled sufficient facts to survive a motion to dismiss.

### III.   Fraudulent Transfer

The only cause of action that may not be resolved by the pleading of an easement is Ogden Soleco's fraudulent transfer claim.  Defendants argue that this claim fails because Ogden Soleco is not a creditor as required by the Uniform Fraudulent Transfer Act (UFTA), Utah Code Ann. § 25-6-1, et seq.  The court disagrees.  Under the UFTA, a "creditor" is defined as "a person who has a claim," which is "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."  Utah Code Ann. § 25-6-2(3), (4).

Here, Ogden Soleco has pled that it has a claim against Defendants—namely, a right to payment based on Defendants' transfers of the Detention Area, which were allegedly made for the purpose of hindering and delaying the development of the shopping center. (See Compl. ¶¶ 68-70.)  Even though Defendants dispute the allegations, a disputed claim is still a claim under the UFTA.  And with a claim against Defendants, Ogden Soleco may be considered a creditor and may proceed with its fraudulent transfer claim, along with its other claims.

### ORDER

For the foregoing reasons, the court DENIES the Motion to Dismiss (Dkt. No. 12).

DATED this 10th day of March, 2015.

BY THE COURT:

*[signature: Tena Campbell]*

TENA CAMPBELL
United States District Judge